UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,

                                            S 04 Cr. 1204 (CLB)

    - against -

                                           *Memorandum and Order*

HOWARD THALER,

                Defendant.
-----------------------------------------------------------x

Brieant, J.

       By letter motion dated October 17, 2005, Defendant Thaler again moves to preclude the admission into evidence on the Government's case of his status as a disbarred attorney, arguing that it is irrelevant to the fraud and other charges in the indictment.[1] Defendant argues that even if the disbarment status were deemed relevant, the prejudicial value would outweigh any probative value. Defendant states that to "the extent Mr. Thaler's lack of a license to practice law is relevant to one or more counts, he will stipulate that he was not licensed to practice law. In the alternative, the Government can introduce evidence of his licensure to practice law and his subsequent lack of a license at the time of the charged events." *Thaler Memo at 4.* The Court heard argument on the *in limine* motion at a pretrial conference held October 26, 2005. The Government argues that Defendant's conduct was as an attorney, and that had victims defrauded known he was disbarred, they would not have engaged the transactions under scrutiny in this trial. It argues that the fact that he conducted the activities despite his disbarment is highly relevant evidence of his intent to defraud, as well as of his motive in the obstruction of, and conspiracy to obstruct justice Counts of the Indictment, because he was attempting to regain his

---

[1] Defense Counsel conceded on the record to the authenticity of the Government's disbarment documents, but not to their admissibility.

license to practice law.

It is axiomatic and undisputed that his disbarment status cannot be offered as evidence to prove that Defendant has a propensity to commit the types of crimes charged and is more likely than others to have committed an alleged criminal act. F.R.Evid. Rule 404(b). By Memorandum and Order dated April 14, 2005, this Court decided that the status of disbarment should not be stricken from the Indictment as surplusage, because the fact that Defendant had been an attorney contributed to his ability to commit the alleged frauds and gave him greater opportunity to commit frauds. His status as a disbarred attorney and his attempts to be reinstated to the bar provided a motive to obstruct justice and to hide the fact that as a disbarred attorney, he was conducting activities that he was no longer licensed to perform.

Upon deliberation of what amounts to essentially the same arguments as those made in support of striking disbarment status from the Indictment, the Court adheres to its earlier ruling on the relevance of the disbarment status, and does so, particularly in light of the Indictment Counts charging obstruction of justice and conspiracy to obstruct justice. It is plain that his status of being disbarred and his desire and attempts to be reinstated to the bar were an essential part of the scheme to obstruct justice and constituted a compelling motive to do so. This is so particularly because he was disbarred, and not simply because he was without a license to practice law.

The Court also concludes, as it held earlier, that the disbarred status provided opportunity

and motive to conduct the other fraudulent activities charged, and is relevant to his activities in this regard. The Court notes that Defendant has understandably refrained from requesting severance of Counts 11, 12, 13 and 14 from the rest of the Indictment and notes that the comparatively weightier relevance of this evidence to those charges strongly enforces this Court's decision.

The Court has also considered whether despite its relevance, the evidence of Defendant's disbarred status may be more prejudicial that probative in this case. Upon giving a limiting instruction to the jury as to the limited purpose for which they may consider the evidence of disbarment, the Court concludes that the effect would not be more prejudicial than probative. The Court believes that a proper limiting instruction will prevent any potential prejudicial effect of the relevant disbarment status evidence.

The Court notes in passing that for purposes of impeaching a testifying Defendant, it is usually not more prejudicial than probative to permit evidence of disbarment. *See e.g., United States v. Weichert*, 783 F.2d 23 (2d Cir. 1986) ("trial judge did not abuse his discretion ... in deciding that the probative value of the disbarment [twelve years earlier] outweighed its prejudicial effect" and "[i]nquiry into disbarment to impeach credibility generally has been allowed"), *citing inter alia United States v. Rubenstein*, 151 F.2d 915, 919. *See also People v. Dorthy*, 156 N.Y. 237, 242 (1898) (People were entitled to prove to the jury that the witness [a lawyer] had been dealt with by the court for [professional] misconduct, and hence his credibility was so far affected.). As previously discussed, disbarment status is highly relevant to the

charges in the Indictment, which adds even greater weight to its probative value, as weighed against its potentially prejudicial effect, than were it offered solely for impeachment.

Defense Counsel has been invited to submit a proposed limiting instruction for the jury. At the very least, the Court upon request should instruct the jury that the documents evidencing disbarment are offered solely and exclusively to show Defendant's status (disbarred attorney) at times relevant to this prosecution, and that the jurors are not to speculate as to why he was disbarred, or as to what the underlying misconduct for which he was disbarred may have been, nor as to whether that order of disbarment was justified. The jury will then act within its traditional province to determine the materiality of the disbarment status under the totality of the evidence in the case and draw whatever inferences it finds proper.

As the Court indicated on the record on October 26, 2005, it reserves its 404(b) rulings as to the specific prior acts precipitating disbarment until a sufficient record of trial proceedings properly permits such a decision, on the totality of the record, and no reference shall be made thereto without prior consultation with the Court.

As an additional matter, Defense Counsel advised the Court that it had retained Marvin Bagwell, Esq. who is presently out of town, to testify as an expert at trial. The Court directed Counsel to make a detailed offer of proof as to what the expert would testify and stated that the Court would either permit the testimony in whole or in part or alternatively, instruct the jury as to known real estate closing practices or clear issues of New York law that would be important

4

to the jury.  Defense letter dated October 26, 2005, states in substance that while Mr. Bagwell is currently out of his office on business travel, the subject matter to which he will be called to testify includes: why and how a foreclosure occurs, is advertised, and its proceeds distributed; the mechanics of purchasing a property; the mortgage application process; securing of title insurance and title searches and settlement statements.  This generic overview does not satisfy the Court's direction to make a detailed offer of proof in order that the Court may decide whether the proposed expert testimony is necessary in light of the Court's ability to provide the jurors with instructions on real estate law.  If it cannot be improved, the Court will have no alternative except to require an offer of proof in question and answer form.  *See* Rule 103(b) F.R. Evid.

No more letter motions will be resolved until after jury selection.

X

        X

            X

              X

SO ORDERED.

Dated: White Plains, New York
      October 28, 2005

                                                                    Charles L. Brieant, U.S.D.J.